UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DIANA HUNTER     Plaintiff

v.     Civil Action No. 4:23-cv-084-RGJ

KENTUCKY WESLEYAN COLLEGE     Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter arises out of alleged violations of: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200e *et seq.*, (2) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, and (3) the Kentucky Civil Rights Act ("KCRA"). [DE 1]. Defendant Kentucky Wesleyan College ("KWC") moves for summary judgment. [DE 24].[1] Plaintiff Diana Hunter ("Hunter") responded and KWC replied. [DE 25; DE 26]. This matter is ripe. For the reasons below, KWC's motion for summary judgment is **GRANTED.**

I.     **BACKGROUND**

At all relevant times Hunter was employed by KWC as a tennis coach. [DE 24-3 at 408]. Her position was renewed on a yearly basis. [*Id.*]. Originally hired as the part-time women's tennis coach by KWC, Hunter was promoted to a full-time position as the head coach for the women's tennis team in 2015, and for the men's tennis team in 2018. [DE 26-3 at 741].

After the 2018-2019 season, the Director of Athletics, Rob Mallory ("Mallory"), and Vice President of Intercollegiate Athletics Mark Shook ("Shook"), requested feedback from the tennis athletes regarding Hunter. [DE 23-2 at 348]. These student athlete survey responses, to summarize, stated: (1) tennis practices were disorganized, (2) Hunter was unprofessional, (3) Hunter was

---

[1] The Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. Going forward, counsel is advised to file a unified motion.

unprepared, (4) Hunter lacked tennis knowledge, and (5) Hunter could not improve the skill level of the team. [DE 26-3 at 739-40, 742-53]. Hunter's 2018-2019 performance review indicated the same concerns as the 2018-2019 student feedback, noting that Hunter was "unsatisfactory" or "needs improvement" with her organization, communication skills, decision-making skills, dependability, job knowledge, and quality of work. [DE 24-4 at 486-88].

On December 16, 2019, KWC issued a letter of admonishment to Hunter regarding a NCAA compliance violation. [DE 23-2 at 335]. And on February 10, 2020, the NCAA subsequently issued a $2,250.00 Division II Enforcement fine to KWC for that compliance violation. [DE 23-1 at 212, 215]. According to the January 22, 2020, NCAA case summary, the compliance violation occurred when Hunter allowed ineligible players play in a tennis match. [*Id.*]. The case summary states in relevant part:

> During the 2019 fall, an incoming men's tennis student-athlete (SA No. 1) and three women's tennis student-athletes (SA Nos. 2-4) were permitted to travel and compete prior to receiving final academic and/or amateurism certification from the NCAA Eligibility Center. In addition, the men's and women's tennis . . . were permitted to travel and compete prior to being "officially" certified as eligible for the competition. However, a determination of eligibility had been done by the certifying official prior to the SAs competing and all but SA Nos. 1-4 in men's and women's tennis had been determined eligible prior to traveling or competing. SA No.1 traveled and competed September 20 and October 4 without amateurism certification from the Eligibility Center. SA No. 2 traveled and competed October 4, 1 and 12 without academic or amateurism certification from the Eligibility Center. SA No. 3 traveled and competed October 4 and 11 without academic or amateurism certification from the Eligibility Center. SA No. 4 traveled and competed October 11 and 12 without academic or amateurism certification from the Eligibility Center. Specifically, the former compliance administrator (FCA) relocated from campus for spouse's career opportunity in late July 2019 and worked remotely until September 20, 2019. . . During this time, the men's and women's tennis head coach (HC) has been notified (via several email updates ending in late August) that there were tasks in the Eligibility Center yet to be completed with certain SAs on her rosters but she did not follow through with her SAs to get them completed. She claimed she didn't recall being notified . . . The violations were not discovered until October 11 by the new compliance administrator who had not started at institution until September 23.

2

[*Id*.]. Hunter does not dispute that Shook called her prior to "a fall match" and informed her that the four players were ineligible; however, she contends that she did not allow the ineligible tennis players to play in the match. [DE 24-4 at 442].

On August 25, 2020, a Title IX complaint was filed against Hunter. [DE 24-5 at 528]. The Title IX complaint alleged that Hunter used the wrong pronouns when referring to a transgender student. [DE 24-4 at 459]. As part of the Title IX investigation, Shook interviewed players on the men's and women's tennis team. [DE 23-2 at 282; DE 24-4 at 293-512; DE 26-3 at 755-65]. Generally, the student athletes were still unhappy with Hunter as the head coach and the state of the program. [*Id*.]. Many students noted that the program had not improved since the 2018-2019 season, which was the last time the record shows that KWC solicited student feedback. [*Id*.]. In her deposition, Hunter admits receiving negative feedback from one disgruntled student but disputes the veracity of these student interview responses. [DE 24-4 at 450, 494].

On August 26, 2020, Hunter was placed on paid administrative leave due to "cumulative concerns." [DE 26-2 at 737]. These "cumulative concerns" included: (1) the Title IX complaint, (2) discussions with Hunter in 2019 about her ability to fulfill the responsibilities of her position, (3) her 2018-19 performance review, (4) the NCAA violation, and (5) student athlete complaints. [*Id*.; DE 23-2 at 272].

A few weeks later, Hunter was permitted to return as head coach. [DE 24-4 at 461]. But on October 2, 2020, she was placed on a performance improvement plan ("PIP") because of "unmet performance objectives" and the "outcomes of recent investigation from concerns expressed by student athletes." [DE 23-2 at 351]. The PIP required Hunter to have monthly check-ins with Shook and submit coaching lesson plans bi-weekly. [DE 23-2 at 351]. Hunter refused to sign the PIP because "she did not agree with it;" yet, the PIP ran through April 30, 2021. [DE 24-4 at 453].

3

A year later, on April 19, 2022, KWC sent out anther "season-ending survey" to tennis players. [DE 26-3 at 766-74]. The student responses in the record reiterated many of the same concerns as the previous student survey responses. [*See id*.]. Seven days later, on April 26, 2022, Hunter was terminated. [DE 24-3 at 429]. And two days after, Elizabeth Greer, a former member of the women's tennis team, sent an email to Shook thanking him for "removing Diana Hunter from her position as head coach." [DE 26-3 at 776].

At the end of her tenure as KWC's tennis head coach, Hunter's final overall record was 24-119. [DE 23-2 at 362]. Hunter's overall win percentage was .202. [*Id*.]. The women's seven-season record was 20-80, and the men's four-season record was 4-39. [*Id*.].

On September July 12, 2023, Hunter filed a complaint in federal court alleging two counts against KWC: (1) Violation of Title VII and the KCRA for sex discrimination, and (2) Violation of ADEA and the KCRA for age discrimination. [DE 1 at 4]. Hunter claims that KWC discriminated against her based on her sex and age when they subjected her to different terms and conditions in her employment and terminated her. [*Id*.].

KWC now moves for summary judgment, arguing that it is entitled to summary judgment as a matter of law because "there is no genuine issue as to any material fact[.]" [DE 24 at 386]. Additionally, KWC asserts that summary judgment is appropriate because "there is no basis in law or fact for [Hunter's] claims of sex and/or age discrimination," and Hunter fails to show by a preponderance of the evidence that KWC's legitimate nondiscriminatory basis is pretextual. [DE 24-1 at 389]. Hunter, in turn, contends that "by demonstrating the ways in which her male and/or substantially younger coworkers were treated more favorably, [she] has already provided sufficient evidence to support the argument that the proffered reason[s] did not actually motivate [KWC's] action[s]," and therefore, KWC's proffered reasons were pretextual. [DE 25 at 562].

4

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131–32 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

5

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III. ANALYSIS

Under federal law, Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "In general, a plaintiff in a Title VII action has the burden of proving by a preponderance of the evidence a prima facie case," through direct or circumstantial evidence. *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 40 (6th Cir. 1999). Direct evidence of discrimination "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). Circumstantial evidence is "proof that does not on its face establish discriminatory animus but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F.3d at 620 (quoting *Wexler*, 317 F.3d at 570 *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 730 (W.D. Ky. 2013) (citing *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) and *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998)). "Because the language of the KCRA mirrors that of its federal counterpart, courts interpret the KCRA consistently with federal anti-

discrimination law." Thus, because Hunter's claims are supported only by circumstantial evidence, the Court will analyze her federal and KCRA claims under the *McDonnell Douglas* framework.

### A. Genuine Dispute of Material Facts

Before analyzing Hunter's claims under *McDonnell Douglas*, the Court must decide whether there are any genuine disputes of material facts. *See* Fed. R. Civ. P. 56(a). Because the crux of Hunter's pretext argument is that male coaches with similar work records were treated differently than her, Hunter's work record is a material fact. Thus, there cannot be any genuine dispute of her work record for summary judgment to be granted.

Hunter's KWC work record includes: (1) a NCAA compliance violation, (2) paid administrative leave due to a Title IX investigation, (3) negative student feedback, (4) poor performance evaluations, and (5) a poor win record. [DE 23-1 at 212; DE 23-2 at 272 DE 26-3 at 739-40, 742-53; DE 23-2 at 282; DE 24-4 at 293-512; DE 26-3 at 755-65; DE 26-3 at 766-74; DE 24-4 at 486-88; DE 23-2 at 362]. There is no genuine dispute that Hunter was placed on paid administrative leave in 2020 or that her performance evaluations were poor. Instead, Hunter disputes the veracity of the student feedback and the facts that resulted in her NCAA compliance violation. [DE 24-4 at 442, 494].

First, there is nothing in the record, outside of Hunter's own speculative testimony, to support Hunter's assertion that the student feedback was "copy and pasted." *Brown v. Arch Wood Prot., Inc.*, 265 F. Supp. 3d 700, 707 (E.D. Ky. 2017) ("[i]t is well established that a party opposing a motion for summary judgment must present evidence supporting [her] claims—conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."). Therefore, there is no genuine dispute about the veracity of the student feedback responses.

7

Second, Hunter's deposition is the only evidence in the record that contests the facts that lead to the NCAA Compliance Violation; however, Hunter's deposition includes contradictions. [*See* DE 23-1 at 105, 111]. When a plaintiffs deposition includes contradictory statements of a material fact, the Sixth Circuit has held that a plaintiff's "internally contradictory deposition testimony cannot, by itself, create a genuine issue of material fact" because no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Bush v. Compass Group USA, Inc.*, 683 F. App'x. 440, 449 (6th Cir. 2017).

As in *Bush*, Hunter's testimony is contradictory. [DE 23-1 at 105, 111]. At first, Hunter asserts that she "didn't put them on," however, later in the same deposition Hunter's testimony states ". . . I let them play because the things that I know to check on was checked." [*Id*.]. Because Hunter's deposition is contradictory it cannot create a genuine issue of material fact by itself. *See Bush*, 683 F. App'x. at 449. And outside of Hunter's contradictory deposition, the evidence supports that she allowed the ineligible players to play. [DE 23-1 at 212]. Thus, there is not a genuine issue of material fact about the NCAA compliance violation. And accordingly, there is no genuine dispute regarding Hunter's work record.

**B. McDonnell Douglas**

Because there is no genuine dispute as to any material fact, it must now be determined whether Hunter's claims survive *McDonnell Douglas* for summary judgment not to be granted in KWC's favor. The first step of the *McDonnell Douglas* framework requires the plaintiff to present evidence sufficient to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once a plaintiff meets his prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id*. at 803. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to

show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

1. <u>Count I: Violation of Title VII & KCRA - Sex Discrimination</u>

    i. *Prima Facie Case*

To establish a prima facie case of sex discrimination under a disparate treatment theory, a plaintiff must show: "(1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position; and (4) that a comparable person outside the protected class was treated more favorably than the plaintiff." *White v. Coventry Health & Life Ins. Co.*, No. 14-CV-00645, 2015 U.S. Dist. LEXIS 147910, at *19 (W.D. Ky. Oct. 30, 2015) (citing *Clay v. UPS*, 501 F.3d 695 (2007)). Neither party disputes that Hunter established a prima facie case of sex discrimination. [DE 24-1 at 391]. Therefore, the burden now shifts to KWC to articulate a legitimate, non-discriminatory basis for Hunter's termination. *See McDonnell Douglas*, 411 U.S. at 803.

    ii. *Legitimate Nondiscriminatory Reason*

KWC proffers three nondiscriminatory bases, supported by the record, for Hunter's termination: (1) Hunter committed avoidable NCAA compliance violations, (2) ongoing performance concerns, and (3) various issues noted in Hunter's personnel file, including, but not limited to, Hunter being placed on paid administrative leave and a subsequent performance improvement plan. [DE 24-1 at 391; DE 23-2 at 333]. This explanation satisfies the KWC's burden of explanation. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient

if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.").

    iii.    *Pretext*

Because KWC has articulated legitimate nondiscriminatory bases for Hunter's termination, Hunter must now show, by a preponderance of the evidence, that KWC's legitimate bases are pretextual for sex discrimination. *See Hicks*, 509 U.S. at 515. At this stage, Hunter need only establish that a reasonable jury could conclude that KWC's reasons for terminating her, or treating her differently compared to similarly situated individuals, are pretextual. *Strickland v. City of Detroit*, 995 F.3d 495, 513 (6th Cir. 2021).

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." R*omans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Pretext may be shown through evidence that employees not in the protected class were treated differently compared to similarly situated individuals. *McDonnell Douglas*, 411 U.S. at 804.

"Employees are similarly situated when they are similar in all relevant respects." *Hattenbach v. Charles Kirchner & Son, Inc.*, No. 4:17-CV-00132-JHM, 2019 U.S. Dist. LEXIS 49911, at *11 (W.D. Ky. Mar. 26, 2019) (citations omitted). "[I]n determining whether two employees are similarly situated 'in all relevant respects,' the Court's task is to 'make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee.'" *Guyton v. Exact Software N. Am.*, No. 2:14-CV-502, 2016 WL 3927349, *10 (S.D. Ohio July 21, 2016) (quoting *Louzon v. Ford Motor Co.,* 718

F.3d 556, 564 (6th Cir. 2013)). It is appropriate for the Court to consider "[d]ifferences in job title, responsibilities, experience, and work record." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004); *see also Campbell v. Hamilton County*, 23 F. App'x. 318, 325 (6th Cir. 2001) (holding that differences in job title and responsibilities, experience, and disciplinary history may establish that two employees are not similarly situated). Thus, Hunter must prove by a preponderance of the evidence that a similarly situated individual exists in all relevant aspects, and that she was treated differently compared to this similarly situated individual to show pretext.

Hunter argues that "by demonstrating the ways in which her male and/or substantially younger coworkers were treated more favorably, [she] has already provided sufficient evidence to support the argument that the proffered reason[s] did not actually motivate [KWC's] action[s]," and therefore, KWC's proffered reasons were pretextual. [DE 25 at 562]. Hunter relies on other KWC's coaches' performance evaluations, other coaches' disciplinary records, Shook's deposition, and her own deposition to support her proposition. [DE 25 at 542-61]. In response, KWC asserts that "Hunter cannot prove that the legitimate, non-discriminatory reasons for her termination were false – and that the discrimination was the real reason for her termination, as the undisputed facts of the record establish the abundant and uncontroverted compliance violations, negative student feedback, and overall poor performance that led to Hunter's termination[.]" [DE 26 at 720].

Here, Hunter's pretext argument turns on whether other male coaches "who displayed similar issues" were placed on a PIP or terminated. [DE 25 at 558]. Therefore, Hunter must show that a similarly situated male individual has the same work record as Hunter, in all relevant aspects, but was treated differently. *See Campbell*, 23 F. App'x. at 325. However, Hunter has not identified

11

a similarly situated male individual in all relevant aspects to Hunter, because not a single male coaches' work record is similar to Hunters. [DE 25 at 558-60; DE 25-4 at 599-600].

For example, Hunter points to the records of Ken Badylak ("Badylak"), Brent Holsclaw ("Holsclaw"), Jamie Duvall ("Duvall"), John Fusco ("Fusco"), Eric Hagan ("Hagan"), Todd Lillpop ("Lillpop"), Chris Feije ("Feije"), Denver McCabe ("McCabe"), and Charles Brown ("Brown") in her briefing as evidence of a similarly situated individuals who were treated differently. [DE 25 at 558-60]. Yet the record shows that Duvall's and Hagan's records only included performance evaluation concerns. [DE 25-10; DE 25-9]. While Badylak's, Freije's, and McCabe's records included performance evaluation concerns and a low win record. [DE 25-6; DE 25-19]. Lillpop's and Holsclaw's records included policy violations in addition to performance evaluation concerns. [DE 25-4; DE 25-11; DE 25-13; DE 25-15; DE 25-18]. And Fusco received one student complaint, in addition to performance concerns and had a low win record. [DE 25-17 at 598; DE 25-4 at 599; DE 25-7].

Although every coach highlighted by Hunter had a portion of her record, none of the coaches' records included significant overlap. For one, there is no evidence in the record to suggest that any of the male coaches were investigated for a Title IX violation, like Hunter. Nor is there any evidence in the record to show that any other KWC male coach had numerous student complaints, like Hunter. And even comparing the performance evaluation included in the record, no other male coach had as many "unsatisfactory" and "needs improvements" checked as Hunter. [*See* DE 24-4 at 486-87 *compare with* DE 25-5; DE 25-6; DE 25-7; DE 25-8; DE 25-9; DE 25-10; DE 25-11; DE 25-18; DE 25-19]. Notably, Hunter does not provide evidence of any coach that had more than three of the same performance concerns as Hunter.

Because no male coach had a similar record to Hunter, Hunter fails to provide sufficient evidence that she was treated differently than similarly situated male individual. As a result, Hunter has failed to show by a preponderance of the evidence that KWC's legitimate nondiscriminatory reason is pretextual to sex discrimination. Accordingly, KWC is entitled to summary judgment in its favor regarding Hunter's sex discrimination claims.

2. Count II: Violation of ADEA & KCRA - Age Discrimination

   *1.     Prima Facie Case*

The Court analyzes Age Discrimination in Employment Act ("ADEA") cases, 29 U.S.C. §§ 621-634, under the same framework as employment discrimination cases under Title VII. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). To establish a prima facie case of age discrimination under the ADEA, Hunter must show she: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which [she was] discharged, and (4) was replaced by a person outside the protected class." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) (citation omitted). The plaintiff can establish the fourth element by showing that a substantially younger person replaced the plaintiff, or by showing that similarly situated, non-protected employees were treated differently than the plaintiff. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–22 (6th Cir. 2008). The Sixth Circuit in *Grosjean*, 349 F.3d at 340, established a bright-line rule that in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant. The Court generally considers an age difference of ten years or more as "significant" for age discrimination. *Id.* at 336.

It is undisputed that Hunter was over the age of forty, that she was qualified for her position, and that she was fired. The only element that KWC disputes is whether Hunter presented evidence

13

of circumstances that support an inference of discrimination, such as whether Hunter was replaced by someone who was substantially younger. *See Moore v. AMPAC*, 645 F. App'x 495, 498 (6th Cir. 2016); *See also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

In this case, Hunter was replaced by Charles "Chuck" Brown ("Brown") as the Head Men's and Women's Tennis Coach. [DE 24-5 at 522]. Brown was 54 when he was hired on August 24, 2022, while Hunter was 62 when she was fired on April 26, 2022. [DE 24-5 at 522; DE 25-1 at 568]. Therefore, there is, at most, an eight-year age difference between Brown and Hunter. Other courts in this district have held that an age difference of eight years, along with no direct evidence of age animus, is not sufficient to satisfy the fourth prong of the prima facie case for age discrimination. *E.g.*, *Harman v. Western Baptist Hospital*, No. 5:12-CV-00159-TBR, 2014 U.S. Dist. LEXIS 95753, 2014 WL 3513202, at *7 (W.D. Ky. July 15, 2014) (citing *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 467 (6th Cir. 2014)); *Webb v. Paducah Bd. of Educ.*, No. 5:16-CV-130-TBR, 2018 U.S. Dist. LEXIS 25021, at *21 (W.D. Ky. Feb. 15, 2018). As in *Harman* and *Webb*, Hunter presents no additional evidence of "age animus," and likewise, the Court finds the eight-year difference between Hunter and Brown, without more, not sufficient to establish prima facie claim of age discrimination.

    2.    Legitimate Nondiscriminatory Reason and Pretext

However, even if Hunter established a prima facie case of age discrimination, Hunter would still fail to demonstrate that KWC's proffered reasons are merely pretext for age

discrimination. As discussed above, KWC asserts that Hunter's disparate treatment was due to her NCAA compliance violation, ongoing performance concerns, and issues noted in her personnel file. [DE 24-1 at 392-94]. But like with her sex discrimination claim, Hunter asserts that she has shown KWC's reasons are pretextual, "by demonstrating the ways in which her male and/or substantially younger coworkers were treated more favorably, [she] has already provided sufficient evidence to support an argument that the proffered reason did not actually motivate the employer's action." [DE 25 at 56]. But Hunter points to the same coaches as before to say that younger similarly situated individuals were treated differently compared to her. [DE 25 at 561]. And, as discussed above, for the same reasons that Hunter's sex discrimination claims fail, her age discrimination claims also fail, as no coach in the included in the record has the same work record as Hunter. Accordingly, KWC is entitled to summary judgment in its favor on Hunter's age discrimination claims, as well.

## CONCLUSION

For the reasons explained, and the Court being otherwise sufficiently advised, **IT IS SO ORDERED:**

(1) KWC's Motion for Summary Judgment is **GRANTED with prejudice** [DE 24]

(2) Accordingly, the Court will enter a separate judgment.

December 26, 2024

Rebecca Grady Jennings, District Judge
United States District Court

15